UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG LEO POTVIN,

    Plaintiff,                             CIVIL ACTION NO. 13-13634

  v.                                   DISTRICT JUDGE DENISE PAGE HOOD
                                         MAGISTRATE JUDGE CHARLES E. BINDER
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of light work.

**II.**    **REPORT**

    **A.**    **Introduction and Procedural History**

Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on March 25, 2011, alleging that he had become disabled and unable to work on November 10, 2010, at age 42, due to diabetes mellitus, hypertension, obstructive sleep apnea, poor memory, anxiety and depression. Benefits were

denied by the Social Security Administration. A requested de novo hearing was held on April 25, 2012, before Administrative Law Judge (ALJ) JoErin O'Leary. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of light work where he was able to alternate between sitting and standing every hour to avoid falling asleep. The ALJ limited him to simple tasks performed in small, familiar groups. The Law Judge further restricted claimant to jobs where he would not be expected to drive, and he would not be exposed to unprotected heights or moving machinery. The climbing of ladders, ropes and scaffolds was not required. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 43 years old at the time of the administrative hearing (TR 43). He had been graduated from high school, and had been employed during the relevant past as machine press operator, park worker and general cleaner (TR 63). Plaintiff acknowledged that he had worked part time in 2010 and 2011 providing personal care for a quadriplegic individual (TR 44). Claimant testified that he could not work more than 20 hours a week because he had trouble sleeping at night and felt tired during his waking day (TR 45). Claimant explained that he could not afford prescription medications for his narcolepsy (TR 46). He added that he also could not afford to purchase a mask (presumably for a C-PAP machine) that his doctor recommended to help him sleep. Plaintiff did not undergo a polysomnogram study due to a lack of insurance (TR 47).

Claimant asserted that he tried to take care of household chores, but found that the chores sometimes overwhelmed him (TR 50). He did not test his blood sugar level as often as needed because he was too "busy" (TR 53). While the medication Cymbalta helped him deal with his depression, he noted that the medicine often caused him to sleep until one or two o'clock in the afternoon (TR 55).

A Vocational Expert, Sue Lyon classified Plaintiff's past work as medium, unskilled activity (TR 63). The witness testified that there were no jobs for claimant to perform if his testimony were fully accepted[1] (TR 66). If he were capable of light work, however, there were numerous unskilled packaging, inspection, and small product assembly jobs that he could perform with minimal vocational adjustment (TR 65). These jobs allowed workers to alternate between sitting and standing every hour to avoid falling asleep. They involved simple tasks where an employee could work in small, familiar groups. There would be no exposure to workplace hazards, such as unprotected heights and moving machinery. Occupational driving, and the climbing of ladders, ropes and scaffolds, would not be required (TR 63-64).

**B.     ALJ Findings**

The Administrative Law Judge found that Plaintiff was impaired as result of diabetes mellitus, hypertension, obstructive sleep apnea, poor memory, anxiety and depression, but that he did not have an impairment or combination of impairments severe enough to meet or

---

[1]The witness opined that, if claimant was consistently off task more than ten percent of the time, all work activity would be precluded (TR 66).

equal the Listing of Impairments. The ALJ recognized that claimant's multiple problems restricted him to jobs that allowed a sit-stand option where he was able to alternate between sitting and standing every hour to avoid falling asleep. Plaintiff was further limited to simple tasks performed in small, familiar groups. The Law Judge also restricted claimant to jobs where he would not be expected to drive or exposed to unprotected heights and moving machinery. There would be no need to climb ladders, ropes or scaffolds (TR 21-32).

    C.    **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en

banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### D. Discussion and Analysis

I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of light work providing a sit-stand option free of workplace hazards, and that did not require any driving or the climbing of ladders/ropes/scaffolds. Contrary to Plaintiff's assertion, the medical evidence does not support his allegation of totally disabling functional limitations stemming from his multiple impairments. The ALJ's decision was consistent with the specific limitations imposed by examining physicians.

Plaintiff challenges the ALJ's determination that his narcolepsy did not constitute a severe impairment (See Plaintiff's Motion for Summary Judgment at pp 14-15). A review of the medical evidence reveals that no doctor of record ever diagnosed narcolepsy based on clinical examination or diagnostic results. While Dr. Khan did not want to rule out the possibility of narcolepsy, he preferred to treat sleep apnea first in order to determine if claimant's complaints of daytime sleepiness could be alleviated (TR 473). This assessment was apparently correct since Plaintiff told Dr. Harold Sommerschield in October 2010, that his narcolepsy was only slight (TR 278).

Despite the evidence that this condition was not a severe impairment, the ALJ's still used the term narcolepsy in her hypothetical question posed to the Vocational Expert. The

5

VE identified numerous jobs that Plaintiff could perform even if he had to alternate between sitting and standing ever hour to avoid falling asleep (TR 63). Therefore, any error that the ALJ made at step two of the sequential process was harmless.

The medical evidence of record also does not support claimant's allegation of totally disabling mental difficulties. The Law Judge found that Plaintiff's anxiety and depression caused moderate difficulties with regard to concentration, persistence, or pace (TR 23). As a result, the ALJ restricted claimant to simple tasks performed in small, familiar groups (TR 27-28). The Law Judge based this determination, in part, on the mental status evaluation of Dr. Margaret Cappone, Ph.D, who observed that Plaintiff could perform simple calculations, and that he was in good contact with reality[2] (TR 23, 468, 470). The ALJ noted that recent treatment records from Jeffrey Wirgau, a physician's assistant, showed that the claimant's mood and independence had improved over the past year (TR 24, 666).

The Law Judge further considered the observation of Dr. Sommerschield, who reported in October 2010, that Plaintiff had not taken his medications on a regular basis, and had not participated in counseling (TR 383). When evaluating Plaintiff's residual mental functional capacity, the Law Judge also took into consideration the opinion of a state agency consultant[3], who concluded that the claimant could perform unskilled work (TR 108). In light

---

[2] While the ALJ did reject those aspects of Dr. Cappone's report that suggested Plaintiff would be incapable of sustaining normal work activities, she presented good reasons for this rejection. The ALJ noted that the claimant had been working on a part-time basis, that he cared for two young children on weekends, and that he lived by himself without serious problems (TR 29).

[3] Under the regulations, ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(f)(2)(I) (2013).

6

of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms stemming from his depresson and anxieety were not fully credible.

Contrary to Plaintiff's assertion, there is no objective medical evidence suggesting that he needed to rest frequently throughout the day. There is no indication in the medical record that pain medications caused any side-effects. The ALJ took into consideration claimant's objectively proven functional limitations by restricting him to jobs that allowed a sit-stand option free of workplace hazards, and that did not require any driving or the climbing of ladders, ropes or scaffolds.

It is the rare case, indeed the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There is evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fits in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various

7

impairments. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairments, the Vocational Expert testified that there were numerous unskilled packaging, inspection, and small product assembly jobs that he could perform with minimal vocational adjustment (TR 65). A hypothetical worker would be able to alternate between sitting and standing every hour to avoid falling asleep. They involved simple tasks where the employee could work in small, familiar groups. There would be no exposure to workplace hazards, such as unprotected heights and moving machinery. Occupational driving, and the climbing of ladders, ropes and scaffolds would not be required (TR 63-64). Given the objective clinical findings of the examining physicians of record, substantial evidence exists on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III. **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a

waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

    Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                     s/ Charles E Binder
                                                          CHARLES E. BINDER
Dated: August 19, 2014                            United States Magistrate Judge